UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | |
|---|---|
| CECIL E. CAPPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:09-CV-431 |
| ) | (PHILLIPS/SHIRLEY) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment [Doc. 13] and Defendant's Motion for Summary Judgment [Doc.20]. Plaintiff Cecil E. Capps ("Plaintiff") seeks judicial review of the decision by Administrative Law Judge ("ALJ") Joan A. Lawrence to deny him benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On January 10, 2005, Plaintiff filed applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). [Tr. 15]. On both applications, Plaintiff alleged a period of disability which began on July 1, 2003. [Tr. 15]. After his applications were denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On August 14, 2007, a hearing was

held before the ALJ to review the determination of Plaintiff's claim. [Tr. 851-75]. On November 28, 2007, the ALJ found that Plaintiff was not under a disability from July 1, 2003, through the date of the decision. [Tr. 15-24]. On July 29, 2009, the Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 5-7]. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2007.

2. The claimant has not engaged in substantial gainful activity since July 1, 2003, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq*.).

3. The claimant has the following severe impairments: back and neck problems with two back surgeries and hearing problems (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual capacity to perform light work except the claimant has some hearing problems which necessitate the use of hearing aides. He is precluded from more than occasional climbing of ladders and stairs; stooping; bending; crouching; and kneeling.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 24, 1968 and was 39 years old, as of his date last insured, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1564).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2003 through the date of this decision (20 CFR 404.1520(g)).

[Tr. 17-23].

## II. DISABILITY ELIGIBILITY

An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

Plaintiff bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004). If the ALJ's findings are supported by substantial evidence

based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, the Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.   ANALYSIS

On appeal, Plaintiff argues that substantial evidence does not support the ALJ's disability determination. Plaintiff contends the ALJ erred by: (A) failing to include the effects of prescribed medical treatment in her Residual Functional Capacity ("RFC") determination, (B) failing to accurately assess medical evidence, (C) determining that the Plaintiff was not credible, and (D) improperly relying on the vocational expert's testimony because it was in direct conflict with SSR 83-12. [Doc. 14]. The Commissioner, in response, contends that substantial evidence supports the ALJ's disability determination. [Doc. 21].

### A. Evaluation of Plaintiff's Medical Treatment in RFC Determination

The Plaintiff first alleges that the ALJ committed plain error by failing to include the extent of the Plaintiff's medically determinable restrictions in her RFC finding. [Doc. 14 at 15]. Essentially, the Plaintiff contends that the ALJ failed to address his ongoing treatment with Associated Therapeautics after two fusion back surgeries. [Doc. 14 at 15]. The Commissioner maintains that the ALJ properly evaluated the Plaintiff's treatment. [Doc. 21 at 13].

The Plaintiff's argument that the ALJ did not mention his ongoing back therapy and home exercises is incorrect. The ALJ specifically references that the Plaintiff's attorney "pointed out that the claimant attended physical therapy sessions . . . and was able to walk 10 to 20 minutes at a time before needing to lie down and stretch out his back." [Tr. 20]. In addition, the ALJ noted that the Plaintiff "performed stretching exercises two to three times daily for a period fo 15 to 20 minutes at a time." [Tr. 20]. Moreover, the Plaintiff's description of these activities at the hearing did not suggest they would prevent light work, and there is no doctor's report indicating that the exercises would prevent light work. [Tr. 858-66]. The Plaintiff's hinting and suggesting that such activities would impede full-time light work is not sufficient to meet his burden of proof. See Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).

The record reflects that the ALJ considered the Plaintiff's ability to work based upon his overall condition as a result of the combination of all his impairments. When evaluating the record, the ALJ included assessments of treating physicians, Drs. White and Bellner, as well as Dr. Wilson and state-agency doctors, all of whom found that the Plaintiff could perform full-time work. [Tr. 18-19, 387-93, 407-12, 439, 444-51]. Based on these reports, the ALJ made findings regarding the Plaintiff's limitations and determined that though his impairments reduce his functional capacity,

the reduction does not preclude all work. [Tr. 23]. This Court finds that the ALJ considered the impact of the Plaintiff's overall condition and functionality and, as such, her determination is supported by substantial evidence.

### B. ALJ Assessment of the Medical Evidence

The Plaintiff argues that the ALJ erred in her interpretation of the medical evidence. [Doc. 14 at 16]. To support his argument, the Plaintiff contends that the ALJ misinterpreted: (1) a November 2003 FCE, (2) Dr. White's June 2003 report (3) Dr. Summer's evaluation, and (4) psychological evidence that the Plaintiff suffered from mental limitations. [Doc. 14 at 16-17]. The Commissioner responded that the ALJ accurately summarized the medical evidence and that the Plaintiff "jumbles the evidence." [Doc. 21 at 14].

#### (i) Physical Work Performance Evaluation

The Plaintiff argues that the ALJ improperly relied on a physical work performance evaluation that found the Plaintiff was capable of medium work for an entire eight-hour workday. [Doc. 16 at 14]. Specifically, the Plaintiff contends that the more recent evaluations of Dr. P. Merrill White, M.D. and Jeffrey Summers, M.D. should carry more weight than the November 2003 physical work performance evaluation. [Doc. 14 at 16]. The Commissioner responds that the Plaintiff "jumbles the evidence" by using the November 2003 physical work performance evaluation as support for the wrong notion that the Plaintiff could perform medium work. [Doc. 21 at 13].

The ALJ correctly acknowledged that Plaintiff was assessed, during the November 2003 physical work performance evaluation, as having the ability to perform medium work with no

restriction. [Tr. 18-19]; [Tr. 413-14]. The ALJ states that "[i]t is noteworthy that a physical work performance evaluation showed that the claimant was capable of returning to medium work for an entire 8-hour workday." [Tr. 18-19]. The ALJ's statement was supported by the November 2003 physical work performance evaluation, which recommended to Dr. White that the Plaintiff was capable of returning to "work at a medium level." [Tr. 414]. While the ALJ finds the physical work evaluation "noteworthy," she does not rely on this point to support a finding that the Plaintiff could return to medium work with no restriction. [Tr. 18-22]. Moreover, the ALJ does not state she gave more weight to the November 2003 physical work evaluation than the reports of Drs. White and Summers.

This Court finds that the ALJ correctly referenced the November 2003 physical work evaluation, which is part of the record. [Tr. 413-14]. In addition, this Court finds that the ALJ rejected the notion that the Plaintiff could return to medium work with no restriction, rather she found that the Plaintiff could return to a limited range of full-time light work or sedentary work. Therefore, this Court finds that the ALJ properly considered the November 2003 physical work evaluation, and did not rely on it to support a conclusion that the Plaintiff could return to medium work.

### (ii) Dr. P. Merrill White, M.D.

The Plaintiff argues that the ALJ failed to mention that Dr. White restricted the Plaintiff to part-time work when referencing the June 2003 work assessment. [Doc. 21 at 14]. The Commissioner responds that Dr. White, made two June 2003 work assessments: the first, made in mid-June, restricted the Plaintiff to part-time work; the second report, made in late June, restricted

the Plaintiff full-time light work with added restrictions. [Doc. 21 at 14]. Specifically, the Commissioner contends that the ALJ makes plain she was citing Dr. White's second June report. [Doc. 21 at 14].

Dr. White performed the first June assessment on June 16, 2003, finding that the Plaintiff was capable of returning to work "on a four hour day for a week, then a six hour day." [Tr. 336]. Dr. White's second report was conducted June 30, 2003, finding that "it is reasonable that [the Plaintiff] return to work" with the limitations of no lifting over twenty pounds, alternating of sitting and standing, and avoidance of all stooping, bending, and twisting. [Tr. 322, 335].

This Court rejects the Plaintiff's argument. The ALJ's statement that Dr. White "advised the claimant that he could return to work in June 2003" does not support the Plaintiff's argument that Dr. White's assessment clearly restricted the Plaintiff to less than eight-hour work days. The Plaintiff contends that the ALJ ignored the first assessment performed by Dr. White, while failing to note Dr. White's second June report finding that the Plaintiff was capable of returning to full-time light work. [Tr. 335]. An ALJ is not required to include a summary of every document pertaining to a claimant's physical health in the portion of his narrative decision where she explains her conclusions. The ALJ is required to consider all of the evidence in the record, but decisions about which evidence merits discussion in the narrative decision are well within the ALJ's "zone of choice" where he can act without the fear of court interference. See Buxton 246 F.3d at 773. While the ALJ did not reference the specific June report performed by Dr. White, the ALJ properly evaluated the record related to the Plaintiff's condition. The ALJ's statement is taken directly from the second June assessment performed by Dr. White, which is supported by the substantial evidence of the record.

### (ii)  Dr. Jeffrey Summers, M.D.

The Plaintiff argues that the ALJ misinterpreted a state agency ordered consultative exam conducted by Dr. Summers. [Doc. 14 at 17]. Specifically, the Plaintiff contends that Dr. Summers' report reveals that he could not sit, stand, or walk "for greater than 6 hours total in a single work day," a significantly greater restriction than found by the ALJ. [Doc. 14 at 17, Tr. 442-43]. The Plaintiff interprets Dr. Summers's language as indicating that he cannot work for more than six hours in an eight-hour per work day. [Doc. 14 at 17]. Since an ability to do "full-time work" on a "regular and continuing basis" means "8 hours a day, for 5 days a week, or an equivalent work schedule . . . ," the Plaintiff asserts he is disabled. [Doc. 14 at 17]; SSR 83-10. The Commissioner contends that the ALJ correctly interpreted those findings as not limiting the Plaintiff to part-time work. [Doc. 21 at 15].

This Court finds that the ALJ properly interpreted Dr. Summers's assessment of the Plaintiff's ability to sit, stand, and walk. "The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour-workday.  Sitting may occur intermittently during the remaining time." SSR 83-10. The state agency assessment form, used by Dr. Summers in his evaluation of the Plaintiff, separates the three activities of sitting, standing, and walking. The assessment breaks the categories down into "stand and/or walk (with normal breaks) for a total of" and "sit (with normal breaks) for a total of," with each question allowing the reviewer to choose from four distinct time allotments. [Tr. 445]. In both categories, Dr. Summers choose the least restrictive option of "about 6 hours in an 8-hour workday." [Tr. 445]. Therefore, Dr. Summers indicated that in each category the Plaintiff could sit for six hours total and stand and/or walk for six

hours total.

The Court interprets Dr. Summers's findings to mean that the Plaintiff can stand and/or walk for six hours in an eight hour workday if necessary and sit for six hours if necessary. See Howington v. Astrue, No. 2:08-CV-189, 2009 WL 2579620, *6 (E.D. Tenn. Aug. 18, 2009). Based on SSR 83-10, Dr. Summers' assessment of the Plaintiff supported the ALJ's finding that the Plaintiff was not disabled because the Plaintiff could perform each of these activities for a total of six hours a day. The ALJ properly determined that while the Plaintiff could not perform the full range of light work jobs, limiting the work to "occasional stooping, bending, crouching, kneeling," the Plaintiff could sit, stand, and walk for the requisite six hour period of time required to perform light work. [Tr. 872].

In addition, the Plaintiff argues that the restrictions of "sitting, standing, or walking for greater than 45 minutes continuously" were improperly discounted by the ALJ. [Doc. 14 at 17]. Specifically, the Plaintiff contends that the vocational expert testified that these restrictions would eliminate all light jobs previously identified. [Doc. 14 at 17]. This Court finds that the Plaintiff's subjective claim to Dr. Summers that he could not sit, stand, or walk for greater than forty-five minutes, was not supported by the medical evidence and, therefore, the ALJ's decision not to afford it weigh is supported by substantial evidence. [Tr. 442]. After interviewing the Plaintiff, Dr. Summers found that the Plaintiff could sit, stand, or walk for no greater than six hours in a workday, rather than relying on the Plaintiff's statement that he could not sit, stand, or walk for greater than forty-five minutes continuously. [Tr. 442-43]. Further, Dr. Summers indicated that the Plaintiff could perform each of these activities for six hours a day "total." [Tr. 445]. Dr. Summers rejected the Plaintiff's subjective claim in his assessment. Therefore, this Court finds that the ALJ's did not

improperly discount the Plaintiff's restrictions based on substantial evidence in the record.

**(iv)     Psychological Impairment**

The Plaintiff argues that the ALJ erred in finding a lack of psychological limitations [Doc. 14 at 17].  In support of his argument, the Plaintiff argues that the record demonstrates an extended period in which the Plaintiff was receiving psychological treatment for depression, suicidal tendencies, and anger issues. [Doc. 14 at 17-18]. The Commissioner contends that the record shows that the Plaintiff's psychological problems were related to his physical problems, that his depressive disorder was mild, and that he did not have a severe mental impairment [Doc. 21 at 16].

The Court finds there is substantial evidence in the record to support the ALJ's finding that the Plaintiff did not suffer from severe psychological limitations.  The ALJ concluded that "[n]o treating or examining physician has suggested the presence of any impairment or combination of impairments of listing level severity," which would significantly limit the Plaintiff's ability to perform basic activities. [Tr. 18].  The ALJ provided an adequate and fair summary of the Plaintiff's mental health issues and mental health treatment record.  [Tr. 18].

The Plaintiff's contention rests solely on an consultative examination conducted by Dr. Wilson.  In support of his argument, the Plaintiff cites Dr. Wilson's report finding that "many of [the Plaintiff's] psychological symptoms appear to be exacerbated by the fact that he is not currently able to work, and are therefore likely to resolve . . . if he is able to return to the workforce." [Doc. 14 at 18].  The Plaintiff, however, neglects to set forth Dr. Wilson's findings in full.  In the same report, Dr. Wilson notes that "[i]ndependence in activities appears to be limited only by [the Plaintiff's] physical symptoms" and "[e]ffectiveness and appropriateness appeared to be limited only be [the

Plaintiff's] physical symptoms." [Tr. 391]. Significantly, Dr. Wilson finds that the Plaintiff's "ongoing cannabis use also warrants a diagnosis of cannabis abuse" and that the Plaintiff's difficulties with short-term memory are possibly due to "[the Plaintiff's] use of marijuana." [Tr. 392]. Therefore, this Court finds that the ALJ properly determined, in accordance with the entire record, that the Plaintiff was only limited by his physical limitations and that his depressive disorder was mild. [Tr. 21, 391-92].

The ALJ acknowledged Dr. Wilson's evaluation as part of the overall record. In regard to Dr. Wilson's report, the ALJ stated that Dr. Wilson "opined that the claimant had no psychological symptoms that would significantly limit his ability to function." [Tr. 21]. In addition, the ALJ noted that Dr. Wilson reported the Plaintiff's arrest "due to smoking marijuana; patronizing prostitution; and possession of weapons." The ALJ acknowledged Dr. Wilson's diagnoses of "major depressive disorder, mild," along with "cannabis abuse." [Tr. 21]. Accordingly, this Court finds the ALJ adequately discussed Dr. Wilson's evaluation and gave specific reasons for not crediting the diagnosis that the Plaintiff suffered from a severe mental impairment. Thus, her determination is supported by substantial evidence.

### C. Plaintiff's Credibility Determination by the ALJ

The Plaintiff argues that the ALJ erred in finding that his testimony was not credible. [Doc. 14 at 18]. Specifically, the Plaintiff contends that the ALJ's credibility determination was flawed because of her reliance on the Plaintiff's criminal record. [Doc. 14 at 18]. Additionally, the Plaintiff contends that the ALJ overstated the extent of his daily living activities. [Doc. 14 at 19]. The Government responds that the ALJ's credibility determination was not flawed and is entitled to great

weight. [Doc. 21 at 16].

"[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 542 (6th Cir. 2007) (quoting Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997). The applicable regulations instruct claimants that,

> "[b]ecause symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions which you, your treating or nontreating source, or other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . in reaching a conclusion as to whether you are disabled."

20 C.F.R. § 404.1529(c)(3). In weighing the credibility of statements regarding functional limitations and restrictions, the ALJ is to consider: the claimant's daily activities; the location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken for pain or other symptoms; treatment other than medication, that the claimant has received for the condition; and any other measures taken to relieve the pain or symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vi). Ultimately, credibility determinations rest with the ALJ. Siterlet v. Sec'y of Health & Human Servs., 823 F.2d 918, 920 (6th Cir.1987).

The ALJ discounted the Plaintiff's credibility for several reasons, all of which were supported by the record. The ALJ noted that the Plaintiff "continues to break the law and smoke marijuana despite the fact that he knows marijuana is considered an illegal drug." [Tr. 22]. In addition, the ALJ found that the Plaintiff was "arrested for consorting with a known prostitute and [for carrying]

a huge Korean sword in his vehicle."[1] [Tr. 22]. The Plaintiff's criminal history, adequately documented in the record, was a legitimate consideration in evaluating his credibility. See Hardisty v. Astrue, 592 F.3d 1072, 1079 (holding that an adverse credibility finding resting in part on claimant's criminal history was substantially justified). Thus, this Court finds the ALJ's consideration of the Plaintiff's criminal record and his continued use of marijuana consistent with finding the Plaintiff's testimony not credible.

Additionally, the ALJ cited the Plaintiff's testimony and evidence from the record about his activities as undermining his allegations of pain and functional limitations. [Tr. 22]. The Plaintiff argues that discounting his credibility based upon these activities is error because the ALJ exaggerated his description of daily living. [Doc. 14 at 20]. The Plaintiff's activities that the ALJ considered included caring for his personal needs and those of his two minor children, preparing meals, visiting with his father, driving his car, and shopping. Under 20 C.F.R. § 404.1529(c)(3), the ALJ is instructed to consider such activities.

The Plaintiff argues that his testimony contradicts the ALJ's findings that he engages in the above activities. The Plaintiff, however, testified that he took his son fishing "up the street to [his] neighbor's pond." [Tr. 866]. The Plaintiff also testified that he was able to perform "yard work" by riding a lawnmower for "15 or 20 minutes." [Tr. 864]. Moreover, the Plaintiff's answers to a daily living questionnaire indicate that he grocery shops two to three times a week, prepares breakfast and

---

[1] The Plaintiff notes that his criminal charges, including one for "carrying a huge Korean sword," were not introduced as exhibits. The ALJ, however, must consider the "entire record" when making a credibility determination. Harris v. Comm'r of Soc. Sec., No. 3:08-CV-2219, 2010 WL 703070, *4 (N.D. Ohio. Feb. 23, 2010). There is evidence in the record of the Plaintiff's alleged crimes. [Tr. 389].

lunch, and picks up his children from the bus stop. [Tr. 84-89]. These activities correspond with and support the ALJ's determination that the Plaintiff could preform a limited range of light work and contravene the Plaintiff's claims that he was unable to do such work.[2] In addition, the above activities support the ALJ's determination that the Plaintiff could perform unskilled sedentary jobs.[3] The Plaintiff's activities, such as caring for the needs of his two minor children, shopping, and driving a car, all directly support a finding that the Plaintiff was able to do such tasks contrary to his subjective complaints of pain, to the degree he maintains to experience. Thus, this Court finds that the ALJ's credibility determination was supported by substantial evidence.

### D. Vocational Expert Testimony

The Plaintiff argues that the vocational expert's testimony regarding the effects of a sit/stand option is contrary to SSR 83-12. [Doc. 14 at 20]. The Commissioner contends that the vocational expert's testimony regarding the effects of a sit/stand option is irrelevant because the ALJ did not find a sit/stand option limitation. [Doc. 21 at 17]. The ALJ relied on testimony from a vocational expert to support her finding that the Plaintiff is capable of a limited range of light work. [Tr. 23].

A vocational expert's testimony can constitute substantial evidence to support such a finding

---

[2]Light work requires lifting no more than twenty pounds, frequent lifting or carrying up to ten pounds, a "good deal" of walking or standing, and, if it involves sitting more of the time, "some" pushing or pulling. 20 C.F.R. 404.1567(b). The ALJ found additional limitations impeded the claimant's ability to perform light work. [Tr. 23].

[3]Sedentary work is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

provided the testimony is based on a hypothetical question that accurately portrays the limitations imposed by the claimant's physical and mental impairments. Varley v. Sec'y of Health & Human Servs, 820 F.2d 777, 779 (6th Cir. 1987). Under these circumstances, the ALJ may pose such hypothetical questions which, in his discretion, include only those limitations that are found to be credible. Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993).

In this case, the hypothetical question posed by the ALJ first limited an individual to light work with the added restrictions of a hearing problem mostly resolved with hearing aids and occasional climbing, stooping, bending, crouching, and kneeling. [Tr. 872]. The ALJ then asked whether the Plaintiff, with the above restrictions, could perform a range of sedentary work. [Tr. 873-74]. The vocational expert, for both questions, responded that there were jobs available that the Plaintiff could perform in the local and national economy. [Tr. 872-74]. The limitations posed in the hypothetical question were supported by the evaluations performed by both Drs. White and Summers. [Tr. 335-36, 872]. Thus, the relevant hypothetical question articulates the limitations in the ALJ's residual functional capacity findings. [Tr. 18-21].

Significantly, the ALJ did not find a sit/stand option limitation based on her review of the record and did not include such a restriction in her hypothetical question. The Plaintiff's attorney, however, modified the hypothetical to include a sit/stand option. This hypothetical was based on the Plaintiff's subjective complaints of pain which, as previously discussed, the ALJ correctly determined were not credible. [Tr. 22]. Plainly stated, substantial evidence in the record supported the ALJ's hypothetical question that resulted in the vocational expert testifying that the Plaintiff could perform work in the national economy, but substantial evidence in the record did not support the Plaintiff's attorney's hypothetical to the vocational expert that required a sit/stand limitation for

the Plaintiff. [Tr. 875]. Therefore, any error in the vocational expert's answer with regard to the a sit/stand limitation is harmless. For this reason, the Court finds that the ALJ's determination that the Plaintiff is capable of performing a limited range of light work is supported by substantial evidence despite the vocational expert's testimony.

## V. CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED**[4] that Plaintiff's Motion for Summary Judgment **[Doc. 13]** be **DENIED**, and that Commissioner's Motion for Summary Judgment **[Doc. 20]** be **GRANTED**.

Respectfully submitted,

　s/ C. Clifford Shirley, Jr.　
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 155 (1985) (affirming the Court of Appeals for the Sixth Circuit rule "conditioning appeal, when taken from a district court judgment that adopts a magistrate's recommendation, upon the filing of objections"). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are preserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).